**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LINDSAY HIEBERT, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| | **CLASS ACTION COMPLAINT** |
| v. | |
| | **JURY TRIAL DEMANDED** |
| VIRTU FINANCIAL, INC., DOUGLAS CIFU, JOSEPH MOLLUSO, ALEX IOFFE, and SEAN GALVIN, | |
| Defendants. | |

Plaintiff Lindsay Hiebert ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Virtu Financial, Inc. ("Virtu" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Virtu securities between

March 1, 2019 and April 28, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Virtu is a financial services company that operates through two segments, Market Making and Execution Services. The Company's product suite includes offerings in execution, liquidity sourcing, analytics and broker-neutral, and multi-dealer platforms in workflow technology. As part of its operations, Virtu claims to have established information access barriers, or separations between different departments or individuals designed to block the exchange of confidential information and prevent conflicts of interest.

3. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company maintained deficient policies and procedures with respect to its information access barriers; (ii) accordingly, Virtu had overstated the Company's operational and technological efficacy as well as its capacity to block the exchange of confidential information between departments or individuals within the Company; (iii) the foregoing deficiencies increased the likelihood that the Company would be subject to enhanced regulatory scrutiny; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

4. On February 17, 2023, after the market had closed, Virtu filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2022 (the "2022 10-K"). In the 2022 10-K, Virtu disclosed that "the Company has been responding to requests for information from the U.S. Securities and Exchange

Commission in connection with an investigation of aspects of the Company's information access barriers."

5.     On this news, Virtu's stock price fell $0.32 per share, or 1.60%, to close at $19.69 per share on February 21, 2023.

6.     Then, on April 28, 2023, Virtu filed a Quarterly Report with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2023 (the "Q1 2023 10-Q").  In the Q1 2023 10-Q, Virtu reiterated that it had been responding to requests for information from the SEC in connection with an investigation of aspects of the Company's information access barriers, and added, in relevant part, "[i]n the absence of a settlement, the Company currently believes it may receive a Wells Notice from the SEC[,]" and "[t]he proposed action would be expected to allege violations of federal securities laws with respect to the Company's information barriers policies and procedures for a specified time period in and around January 2018 to April 2019 and related statements made by the Company during such period."

7.     On this news, Virtu's stock price fell $1.13 per share, or 5.68%, to close at $18.77 per share on May 3, 2023.

8.     On May 1, 2023, the *Wall Street Journal* published an article entitled "Virtu Stock Falls After Disclosure of Potential SEC Enforcement Action."  In the article, it was revealed that a Virtu spokesperson stated that the investigation was "primarily focused on an access controls weakness in one of [Virtu's] internal back office systems containing post trade information that theoretically could allow certain system users access greater than what was intended by our policies."

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to Virtu's most recently filed quarterly report with the SEC, as of April 28, 2023, there were 95,423,359 shares of the Company's Class A common stock, 8,856,531 shares of the Company's Class C common stock, and 60,091,740 shares of the Company's Class D common stock outstanding.  Virtu's securities trade on the Nasdaq Global Select Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in Virtu securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Virtu securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Virtu is a Delaware corporation with principal executive offices located at 1633 Broadway, New York, New York, 10017.  Virtu's common stock trades in an efficient market The NASDAQ under the ticker symbol "VIRT".

16.     Defendant Douglas Cifu ("Cifu") has served as the Company's Chief Executive Officer at all relevant times.

17.     Defendant Joseph Molluso ("Molluso") served as Virtu's Chief Financial Officer ("CFO") from prior to the start of the Class Period until September 2019 and has served as Co-President and Co-Chief Operating Officer since May 2020.

18.     Defendant Alex Ioffe ("Ioffe") served as the Company's CFO from September 2019 until August 2020.

19.     Defendant Sean Galvin ("Galvin") has served as the Company's CFO since August 2020.

20.     Defendants Cifu, Molluso, Ioffe, and Galvin are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Virtu's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Virtu's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Virtu, and their

access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.   Virtu and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.   Virtu is a financial services company that operates through two segments, Market Making and Execution Services.  The Company's product suite includes offerings in execution, liquidity sourcing, analytics and broker-neutral, and multi-dealer platforms in workflow technology.  As part of its operations, Virtu claims to have established information access barriers, or separations between different departments or individuals designed to block the exchange of confidential information and prevent conflicts of interest.

### Materially False and Misleading Statements Issued During the Class Period

24.   The Class Period began on March 1, 2019, when Virtu filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2018 (the "2018 10-K").  In providing an overview of the Company's business, the 2018 10-K stated, in relevant part:

> *Technology and operational efficiency are at the core of our business, and our focus on market making and order routing technology is a key element of our success. We have developed a proprietary, multi-asset, multi-currency technology platform that is highly reliable, scalable and modular, and we*

*integrate directly with exchanges and other liquidity centers*.[1] Our market data, order routing, transaction processing, risk management and market surveillance technology modules manage our market making and institutional agency activities in an efficient manner that enables us to scale our activities globally across additional securities and other financial instruments and asset classes without significant incremental costs or third-party licensing or processing fees.

We believe that technology-enabled market makers like Virtu serve an important role in maintaining and improving the overall health and efficiency of the global capital markets by continuously posting bids and offers for financial instruments and thereby providing market participants a transparent and efficient means to transfer risk. All market participants benefit from the increased liquidity, lower overall trading costs and improved execution certainty that Virtu provides.

25.    In addition, in providing an overview of the Company's risk management policies, the 2018 10-K stated, in relevant part:

We are focused on risk management and it is at the core of our trading infrastructure. Our real time risk controls monitor all of our market making positions, incorporating market data and evaluating our risk exposure to continuously update our outstanding bid and offer quotes, often many times per second. Although the majority of our market making is automated, the trading process and our risk exposure are monitored by a team of individuals, including members of our senior management team, who oversee our risk management processes in real-time. Our risk management system is intrinsic to our trading infrastructure that is utilized in each of our trading centers.

Our on exchange market making strategies are designed to put minimal capital at risk at any given time by limiting the notional size of our positions. Our strategies are also designed to lock in returns through precise hedging in the primary instrument or in one or more economically equivalent instruments, as we seek to eliminate the price risk in any positions held. Our real-time risk management system is built into our trading platform and is an integral part of our order life-cycle, analyzing real-time pricing data and confirming that our order activity is conducted within strict pre-determined trading and position limits. If our risk management system detects that a trading strategy is generating revenues or losses in excess of our preset limits, it will lockdown that strategy and alert management.

*** 

We utilize the following approach to managing risk:

***

---

[1] Unless otherwise noted, all emphases included herein are added.

- *Operational Controls*. We have a series of fully automated controls over of our business. Key automated controls include:

    o Our technical operations system continuously monitors our network and the proper functioning of each of our trading centers around the world;

    o Our market making system continuously evaluates the listed securities in which we provide bid and offer quotes and changes its bids and offers in such a way as to minimize exposure to directional price movements. The speed of communicating with exchanges and market centers is maximized through continuous software and network engineering innovation, allowing us to achieve real-time controls over market exposure. We connect to exchanges and other electronic venues through a network of co-location facilities around the world that are monitored 24 hours a day, five days a week, by our staff of experienced network professionals;

    o Our clearing system captures trades in real-time and performs automated reconciliations of trades and positions, corporate action processing, options exercises, securities lending and inventory management, allowing us to effectively manage operational risk;

    o Software developed to support our market making systems performs daily profit and loss and position reconciliations; and

    o After event reviews where operational issues are evaluated and risk mitigations are identified and subsequently implemented.

26.     Finally, in discussing the regulations to which the Company is subject, the 2018

stated, in relevant part:

Most aspects of our business are subject to extensive regulation under federal, state and foreign laws and regulations, as well as the rules of the various self-regulatory organization ("SROs") of which our broker-dealer subsidiaries are members. The SEC, the U.S. Commodity Futures Trading Commission ("CFTC"), state securities regulators, FCA, the Securities and Futures Commission ("SFC"), FINRA, National Futures Association ("NFA"), other SROs and other U.S. and foreign governmental regulatory bodies promulgate numerous rules and regulations that may impact our business. As a matter of public policy, regulatory bodies are charged with safeguarding the integrity of the securities and other financial markets and with protecting the interests of investors in those markets. Regulated entities are subject to regulations concerning all aspects of their business, including, but not limited to, trading practices, order handling, best execution practices, anti-money

laundering and financial crimes, handling of material non-public information, safeguarding data, compliance with exchange and clearinghouse rules, capital adequacy, reporting, record retention, market access and the conduct of officers, employees and other associated persons. Virtu Americas LLC carries certain customer accounts and is therefore subject to applicable SEC requirements relating to the protection of customer securities and the maintenance of a cash reserve account for the benefit of customers.

***

Failure to comply with any laws, rules or regulations could result in administrative or court proceedings, censures, fines, penalties, judgments, disgorgement, restitution and censures, suspension or expulsion from a certain jurisdiction, SRO or market, the revocation or limitation of licenses, the issuance of cease-and-desist orders or injunctions or the suspension or disqualification of the entity and/or its officers, employees or other associated persons. From time to time, we are the subject of requests for information and documents from the SEC, FINRA and other regulators. In is our practice to cooperate and comply with the requests for information and documents. These requests could lead to administrative or court proceedings. Whether or not they result in adverse findings, they can require substantial expenditures of time and money and can have an adverse impact on a firm's reputation, customer relationship and profitability.

The regulatory environment in which we operate is subject to constant change. Our business, financial condition and operating results may be adversely affected as a result of new or revised legislation or regulations imposed by the U.S. Congress, foreign legislative bodies, state securities regulators, U.S. and foreign governmental regulatory bodies and SROs. Additional regulations, changes in existing laws and rules, or changes in interpretations or enforcement of existing laws and rules often directly affect the method of operation and profitability of regulated broker-dealers. We cannot predict what effect, if any, future legislative or regulatory changes might have. However, there have been in the past, and could be in the future, significant technological, operational and compliance costs associated with the obligations which derive from compliance with such regulations. Regulators may propose market structure changes particularly considering the continued regulatory scrutiny of high frequency trading, alternative trading systems, market fragmentation, colocation, access to market data feeds, and remuneration arrangements such as payment for order flow and exchange fee and rebate structures.

This was plainly a catch-all provision not sufficiently tailored to meet the known and/or foreseeable risks facing the Company.

27.     Appended to the 2018 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Cifu and Molluso, attesting that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28.     On May 3, 2019, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q1 2019 results (the "Q1 2019 Earnings Call").  During the scripted portion of the Q1 2019 Earnings Call, Defendant Cifu stated, in relevant part:

> There are a number of ways in which the combined firm is better able to serve clients. [. . .] [Y]ou will see we have tried to depict what we believe to be the unique aspects of our new combined firm. We are the only firm positioned to serve a global diversified customer base with world-class products enhanced by unique sources of liquidity. Here you can see our comprehensive suite of products and services to help clients with our pre-trade tools[.]

29.     On August 8, 2019, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q2 2019 results (the "Q2 2019 Earnings Call").  During the scripted portion of the Q2 2019 Earnings Call, Defendant Cifu stated, in relevant part:

> Virtu's Execution Services offering is a great example of how we were able to marry technology and people. Both are necessary, neither sufficient on their own. That is to say, we're able to grow at scale while maintaining a high level of client service, which was the hallmark of ITG, because we have, first, the right kind of technology which I've discussed with all of you over the years on these calls, is a unitary global multi-asset class technology stack, as well as the right people, who are fluent technologies and software engineers, if you will, but also great client service professionals.
>
> Taken together, we feel like we built and are committed to continue building a unique and truly integrated global model that strategically and sustainably positions us to benefit from the significant secular changes the industry is currently going through and it's compelling in its combination of technology, training expertise and unique liquidity.
>
> We are excited about the prospect of leveraging Virtu's technological and diversified asset class capabilities across our new suite of global products and growing client base to drive our organic growth initiatives.

30.     On February 11, 2020, Virtu issued a press release announcing the Company's Q4 and full year 2019 results.  The press release quoted Defendant Cifu, stating, in relevant part:

> "I'm very pleased with the strong performance we delivered in the fourth quarter amidst the muted global trading environment.  ***Our market making results were driven by our ongoing commitment to investing in technology, which also led to notable growth in our European and U.S. equities market making segment in both our customer and non-customer businesses***.  In our execution services business, we continue to integrate ITG, and our expense synergies realized to date have already exceeded our own initial expectations[.]" [. . .] "We believe there are significant growth opportunities ahead as we continue to add scale, market presence and execution capabilities that will add value to our clients' trading and investment processes. Our business is off to a strong start in 2020 and I'm excited for the opportunities ahead."

31.     That same day, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q4 2019 results (the "Q4 2019 Earnings Call").  During the scripted portion of the Q4 2019 Earnings Call, Defendant Cifu stated, in relevant part:

> One of the hallmarks of Virtu has always been our relentless effort to invest in scaling and improving our offerings, across both our business segments offerings that are designed to drive organic revenue growth in any environment. We also always focus on cost optimization.
>
> ***
>
> Moving forward into 2020 across the firm, we are steadfast in our commitment and determination to continuously improve the quality, scalability and reliability of our global multi-asset class offerings. I remain confident we are moving Virtu in the right direction and we will continue this year as we capitalize and continue to grow momentum generated in 2019.

32.     On February 28, 2020, Virtu filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2019 (the "2019 10-K").  The 2019 10-K contained substantively similar descriptions of the Company's business overview, risk management policies, and regulatory obligations as discussed, *supra*, in ¶¶ 24-26.

33.     Appended to the 2019 10-K as exhibits were signed certifications pursuant to SOX by Defendants Cifu and Ioffe, attesting that "[t]he information contained in the [2019 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

34.     On February 11, 2021, Virtu issued a press release announcing the Company's Q4 and full year 2020 results.  The press release quoted Defendant Cifu, stating, in relevant part:

> "Capping off a record breaking 2020, we delivered exceptional performance globally in the fourth quarter. I'm extremely proud of the team for their dedication in executing amidst a challenging global situation[.]" [. . .] "Our market making segment played a critical role in the markets by seamlessly executing trades, and ultimately delivering $1.3 billion of price improvement to individual investors. Our Execution Services segment had a record quarter, delivering outstanding service and further enhancements to our best-in-class products that drive value across the entire trade lifecycle and assist our clients in navigating our ever changing market landscape."

35.     That same day, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q4 2020 results (the "Q4 2020 Earnings Call").  During the scripted portion of the Q4 2020 Earnings Call, Defendant Cifu stated, in relevant part:

> Starting with Market Making, our customer wholesale and non-customer businesses performed exceedingly well in Q4 and in 2020. ***Our continuous enhancements to our training strategies, technology and asset class expansion delivered substantial returns by improving our yield on the opportunities presented this quarter, which included better-than-average volumes and levels of volatility that remain persistently elevated relative to prior years***. On the customer side, in 2020, we executed over 1.27 billion orders for our wholesale customers, which included providing approximately $1.3 billion in price improvement to retail investors. We provide wholesale Market Making services to retail investors across over 200 platforms, ranging from retail and private client businesses of banks and global financial institutions to online retail firms, which provide immediate execution at or better than the national best bid or offer in over 8,000 listed securities in the United States. In addition, our non-customer Market Making business delivered solid results in 2020.

36.     On February 25, 2021, Virtu filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2020 (the "2020 10-K").  The 2020 10-K contained substantively similar descriptions of the Company's

business overview, risk management policies, and regulatory obligations as discussed, *supra*, in ¶¶ 24-26.

37.     Appended to the 2020 10-K as exhibits were signed certifications pursuant to SOX by Defendants Cifu and Galvin, attesting that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

38.     On May 4, 2021, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q1 2021 results (the "Q1 2021 Earnings Call").  During the scripted portion of the Q1 2021 Earnings Call, Defendant Cifu stated, in relevant part:

> During the first quarter, our market making results reflected continued strength across the board in our underlying businesses. Our customer market making business performed exceptionally well. ***And the long-term trend is driven by technology, innovation and competition, continue to enable and support unprecedented levels of retail and professional investor engagement***. This performance was but trusted by our non-customer market making business which saw healthy and steady performance across asset classes and geographies where we make markets.

39.     On November 3, 2021, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q3 2021 results (the "Q3 2021 Earnings Call").  During the scripted portion of the Q3 2021 Earnings Call, Defendant Cifu stated, in relevant part:

> Our performance in the quarter such as the highlights the success of our organic business growth plan, the goal of which is to increase our overall baseline performance in two ways. First, by expanding our addressable market by approaching new opportunities such as options, market making, crypto and Virtu capital markets. And second, by increasing the competitiveness and profitability in our existing offerings through the hard work of integrating Virtu's best-in-class technology with the businesses we have acquired[.]
>
> *** ***
>
> In the latest quarter, this business saw strong results despite options volumes being down 15% from recent peak in early 2021. We continue to make select key hires to expand the geographic footprint of this business and accelerate our growth. I also

want to provide an update on cryptocurrency. ***We have formed a dedicated team of traders and technologists and plan to add additional resources in the near-term***.

40.    On February 8, 2022, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q4 2021 results (the "Q4 2021 Earnings Call").  During the scripted portion of the Q4 2021 Earnings Call, Defendant Cifu stated, in relevant part:

> Our Market Making business produced $5.8 million per day in the quarter, almost 50% more than we achieved in the third quarter despite volumes and volatility being 10% and 26% higher in the quarter, respectively; and market-wide Rule 605 volumes being up 4% for the third quarter. Our strong performance was driven by several factors, including most significantly, the continued progress we have made on our efforts to improve internalization, which optimizes how we manage risk across the firm. The benefits of these ongoing enhancements have become evident over the last couple of quarters, and we expect that these efforts around firm-wide internalization will continue to bear fruit for the foreseeable future.

> ***

> Turning to some issues in and around our industry, we remain in continuous dialogue with clients, lawmakers, regulators and key industry stakeholders regarding market structure policies that provide investors with more investment choices and then make our markets more accessible and more transparent for retail investors. In fact, I believe that the recent focus on the U.S. retail investor has been illuminated from many who may not have realized how well the retail investor has served.

> ***

> As many of you are aware, today's markets are evolving at a faster pace than ever thanks to unrelenting innovation, the application of technology and end user demand to have everything readily available in the palm of their hands for little or no cost. These factors increasingly contribute to the growth of secular tailwinds, including the birth of new asset classes, new business models such as zero commission training and the continued electronification of markets all of which expands the long-term opportunity for Virtu.

> ***

> Virtu's commitment to disciplined expense management and scaled operations means that our success is not tied to a single trend or type of macro environment. We are well positioned for success across a variety of macroeconomic environments. Our efforts to expand our footprint by entering new markets and products combined with our continued enhancements to our core businesses,

compounds the sustained growth potential for Virtu from secular and macro tailwinds.

41. On February 18, 2022, Virtu filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2021 (the "2021 10-K"). The 2021 10-K contained substantively similar descriptions of the Company's business overview, risk management policies, and regulatory obligations as discussed, *supra*, in ¶¶ 24-26.

42. Appended to the 2021 10-K as exhibits were signed certifications pursuant to SOX by Defendants Cifu and Galvin, attesting that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

43. On April 28, 2022, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q1 2022 results (the "Q1 2022 Earnings Call"). During the scripted portion of the Q1 2022 Earnings Call, Defendant Cifu stated, in relevant part:

> Firmwide, our strong performance was driven by several factors, including most significantly, the continued progress we have made on our efforts to improve internalization, which optimizes how we manage opportunity and net positions across the firm. The better we internalize, the less spread we pay away to the Street and the more we can save on brokerage, exchange and clearance fees. Our global multi-asset footprint and our collaborative culture means Virtu is uniquely positioned to achieve higher levels of inter and intra asset internalization. As we discussed on our prior calls, we believe the benefits of these ongoing enhancements will continue to bear fruit for the foreseeable future and will continue to grow as we expand to new asset classes and geographies.
>
> ***
>
> As I mentioned on prior calls, Virtu's unique combination of Market Making and Execution Services allows us to provide liquidity and size and scope unlike any other ATM provider. We continued to see impressive progress in our business this quarter as our stated organic growth initiatives grew to 10% of our adjusted net trading income or $821,000 per day. Within these initiatives, our growing options business delivered another solid quarter of growth on the back of expanded simple

venue coverage as well as new technology deployment as we increase our footprint globally. Growing our options capabilities remains a top priority and we are investing significant resources to become a wholesaler in options to service our retail partners. As we have mentioned on prior calls, we set out a couple of years ago to build an options franchise from scratch by leveraging our infrastructure, technology and market structure expertise.

44.     On July 28, 2022, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q2 2022 results (the "Q2 2022 Earnings Call").  During the scripted portion of the Q2 2022 Earnings Call, Defendant Cifu stated, in relevant part, "[b]roader adoption of our product yields a better client experience, deepens our relationships and leads to higher client retention, all of which will ultimately help increase our share of wallet and grow our scale," and "[w]e are confident that the truly global organization we have built is to poised to make it much easier for clients to integrate more of our products into their daily business and we see this as an exciting area of growth."

45.     On November 3, 2022, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q3 2022 results (the "Q3 2022 Earnings Call").  During the scripted portion of the Q3 2022 Earnings Call, Defendant Cifu stated, in relevant part:

> *For now, being competitive and options require significant investment in technology and people to ensure that we have adequate capacity to meet our goals*. We continue to make methodical progress in expanding our simple universe and increasing our interactions with order flow from options drivers. Our growth in options year-to-date is especially impressive given the market-wide options volumes is relatively flat to the same period.

46.     On January 26, 2023, Virtu hosted an earnings call with investors and analysts to discuss the Company's Q4 2022 results (the "Q4 2022 Earnings Call").  During the scripted portion of the Q4 2022 Earnings Call, Defendant Cifu stated, in relevant part:

> *Our performance in the fourth quarter, full year 2022 and in the start of 2023 is the result of the ongoing investments we are making in people, technology, integration, deploying strategies to new products and ongoing innovation to expand our abilities to address more opportunities become more efficient and*

*capture incremental revenue from each existing opportunity*. As always, we remain relentlessly focused on cost and realized a 59% adjusted EBITDA margin for the full year and a 46% adjusted EBITDA margin in the fourth quarter.

47.     The statements referenced in ¶¶ 24-46 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company maintained deficient policies and procedures with respect to its information access barriers; (ii) accordingly, Virtu had overstated the Company's operational and technological efficacy as well as its capacity to block the exchange of confidential information between departments or individuals within the Company; (iii) the foregoing deficiencies increased the likelihood that the Company would be subject to enhanced regulatory scrutiny; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## The Truth Emerges

48.     On February 17, 2023, after the market had closed, Virtu filed the 2022 10-K with the SEC.  The 2022 10-K stated, in relevant part:

> In the ordinary course of business, the nature of the Company's business subjects it to claims, lawsuits, regulatory examinations or investigations and other proceedings, any of which could result in the imposition of fines, penalties or other sanctions against the Company. ***The Company and its subsidiaries are subject to several of these matters at the present time, including, among others, a matter in which the Company has been responding to requests for information from the U.S. Securities and Exchange Commission in connection with an investigation of aspects of the Company's information access barriers***. The Company is cooperating with this civil investigation.

49.     On this news, Virtu's stock price fell $0.32 per share, or 1.60%, to close at $19.69 per share on February 21, 2023.

50.     Then, on April 28, 2023, Virtu filed the Q1 2023 10-Q with the SEC.  The Q1 2023 10-Q stated, in relevant part:

> In the ordinary course of business, the nature of the Company's business subjects it to claims, lawsuits, regulatory examinations or investigations and other proceedings, any of which could result in the imposition of fines, penalties or other sanctions against the Company. The Company and its subsidiaries are subject to several of these matters at the present time, including, among others, a matter in which the Company has been responding to requests for information from the U.S. Securities and Exchange Commission in connection with an investigation of aspects of the Company's information access barriers. ***The Company is cooperating with this civil investigation and has engaged in settlement discussions in respect of the matter. In the absence of a settlement, the Company currently believes it may receive a Wells Notice from the SEC. The proposed action would be expected to allege violations of federal securities laws with respect to the Company's information barriers policies and procedures for a specified time period in and around January 2018 to April 2019 and related statements made by the Company during such period***. The Company believes it would have meritorious defenses in the event of such an action and would plan to assert them.

51.     On this news, Virtu's stock price fell $1.13 per share, or 5.68%, to close at $18.77 per share on May 3, 2023.

52.     Then, on May 1, 2023, the *Wall Street Journal* published an article entitled "Virtu Stock Falls After Disclosure of Potential SEC Enforcement Action."  The article stated, in relevant part:

> Shares of Virtu Financial are down more than 3% after the electronic trading firm disclosed Friday that it is facing a potential enforcement lawsuit from the Securities and Exchange Commission.
>
> - Virtu disclosed in a quarterly filing after Friday's closing bell that it had engaged in settlement discussions with the SEC about an investigation related to "information barriers policies and procedures" between January 2018 and April 2019.
>
> - The company first disclosed the probe in February. Its updated disclosure suggested that the SEC could be moving forward with a lawsuit.

- Virtu said it "currently believes it may receive a Wells notice from the SEC," referring to a type of letter that the agency's staffers send to companies or individuals to inform them of a possible enforcement action.

A Virtu spokesman said the investigation was "primarily focused on an access controls weakness in one of our internal back office systems containing post trade information that theoretically could allow certain system users access greater than what was intended by our policies."

"We have no reason to believe and have found no evidence that anyone ever made any improper use of any client information," he said.

Virtu is best known as a so-called retail wholesaler, meaning that it executes stock trades for online brokerages used by individual investors. Its chief executive, Douglas Cifu, has been a vocal critic of the SEC's proposals to overhaul the handling of small investors' orders. In March, he sent the agency a letter warning that it was "poised to engage in a risky experiment."

The SEC's investigation doesn't involve Virtu's wholesaler arm, a person familiar with the matter said, but rather a business executing orders for institutional investors that Virtu took over as part of its 2017 acquisition of KCG Holdings, the person said. Regulations and Virtu's own policies require this "agency execution" business to be kept separate from Virtu's proprietary-trading business.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Virtu securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Virtu or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Virtu;

- whether the Individual Defendants caused Virtu to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Virtu securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

60.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Virtu securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Virtu securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

61.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Virtu securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Virtu securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Virtu securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Virtu's finances and business prospects.

67.     By virtue of their positions at Virtu, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

68.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Virtu, the Individual Defendants had knowledge of the details of Virtu's internal affairs.

69.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Virtu.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Virtu's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Virtu securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Virtu's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Virtu securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

70.     During the Class Period, Virtu securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Virtu securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Virtu securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Virtu securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

71.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

24

72.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

73.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     During the Class Period, the Individual Defendants participated in the operation and management of Virtu, and conducted and participated, directly and indirectly, in the conduct of Virtu's business affairs.  Because of their senior positions, they knew the adverse non-public information about Virtu's misstatement of income and expenses and false financial statements.

75.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Virtu's financial condition and results of operations, and to correct promptly any public statements issued by Virtu which had become materially false or misleading.

76.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Virtu disseminated in the marketplace during the Class Period concerning Virtu's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Virtu to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Virtu within the meaning of

Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Virtu securities.

77.     Each of the Individual Defendants, therefore, acted as a controlling person of Virtu. By reason of their senior management positions and/or being directors of Virtu, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Virtu to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Virtu and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

78.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Virtu.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  May 19, 2023                                      Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _Lindsay Hiebert_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Virtu Financial, Inc. ("Virtu") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Virtu securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Virtu securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   The attached sheet lists all of my transactions in Virtu securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.



**Executed** <u>5/8/2023                                    </u>
                            **(Date)**

**DocuSigned by:**

*Lindsay Hiebert*
_____
52E21ED3F8F445F...
                        **(Signature)**


Lindsay Hiebert
_____
                        **(Type or Print Name)**

**Virtu Financial, Inc. (VIRT)**                                                                                   **Lindsay Hiebert**

**List of Purchases and Sales**

| Transaction Type | Security Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|---|
| Purchase | Common Stock | 11/22/2022 | 6 | $22.8900 |
| Purchase | C 20230120 30 | 3/30/2022 | 2 | $9.6000 |
| Sale | C 20230120 30 | 11/22/2022 | (2) | $0.0800 |