# EXHIBIT A

0893secm

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

SECURITIES and EXCHANGE
COMMISSION,

                    Plaintiff,                    New York, N.Y.

            v.                                    23 CV 8072 (JGK)

VIRTU FINANCIAL, INC., et al.,

                    Defendants.

-------------------------------x          Motion

                                          August 9, 2024
                                          12:30 p.m.

Before:

                    HON. JOHN G. KOELTL,

                                          District Judge


                    APPEARANCES


SECURITIES and EXCHANGE COMMISSION
     Attorneys for Plaintiffs
BY:  DAMON W. TAAFFE
         JAMES M. CARLSON


PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
     Attorneys for Defendants
BY:  LORIN . REISNER
         ANDREW G. GORDON
         JESSICA S. CAREY
         MEGAN VINCENT


                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

0893secm

(Case called)

MR. TAAFFE: Good morning. Damon Taaffe for the Commission. With me is James Carlson, also with the Commission.

MR. REISNER: Good afternoon, your Honor. Lorin Reisner from Paul Weiss for Virtu. And I'm with my colleagues Megan Vincent, Andrew Gordon, and Jessica Carey.

THE COURT: Good afternoon, all.

I should point out at the outset that I know Mr. Reisner. We were colleagues together at Debevoise over 30 years ago. Nothing about that affects anything that I do in the case.

This is a motion to dismiss by the defendants. I'll listen to argument.

MR. REISNER: Thank you, your Honor. I'd like to briefly review why all of the claims asserted in the amended complaint, those under Section 17(a)(2) and (a)(3) of the Securities Act, as well as those under Section 15(g) of the Exchange Act, should be dismissed.

THE COURT: There is no motion to dismiss Count Four, 17(a)(3) against VAL.

MR. REISNER: That is correct, your Honor. All of the counts on which we have moved should be dismissed.

Let me start with the Section 17(a)(2) and (a)(3) claims. None of the statements that the SEC alleges were

0893secm

misleading are actionable as a matter of law for two fundamental reasons:  First, the statements were true and accurate based on the allegations of the amended complaint, and documents referenced by and incorporated in the amended complaint that the Court may properly consider on this motion.

Those allegations and those documents demonstrate that Virtu had extensive written policies and procedures providing for prohibitions on the misuse of sensitive information, prohibitions on accessing non-permission data, physical information barriers, and logical information barriers.

For example, the VAL compliance manual referenced in paragraph 47 of the amended complaint and attached as Exhibit 1 to our moving declaration provides that the firm has established information barrier processes that are intended to segregate information within discrete business units.  The information barriers include both physical and systematic separation between business groups, so that the information processed by one business group is not shared with other business groups who do not have a need to know about the information.

The compliance manual further provides that employees are not permitted to access proprietary or client information that is not necessary to carry out their job responsibilities. And it states having physical access or systems access to this type of information does not equate to being authorized to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0893secm

access information.

And I quoted from pages 18-19 of the compliance manual.

Similarly, the Virtu confidential information policy referenced in paragraph 47 of the amended complaint and attached as Exhibit 2 to the moving declaration establishes policies requiring logical barriers and a permissioning system, and that's at pages 2-3 of that document. The amended complaint in this case itself acknowledges that employees accessing the FS Database generally are required to "enter their unique log-in credentials and could access only information necessary for their role at the firm. A process typically known as permissioning." Quoting paragraph 18 of the amended complaint.

The amended complaint and documents referenced by and incorporated in the complaint further demonstrate that Virtu maintained and enforced those policies and procedures through mandatory training for all employees, establishing supervisory responsibility for allowing access to sensitive data, mandatory annual compliance programs for all employees, and other safeguards. Employees were expressly trained not to access data outside their job responsibilities.

As the Virtu financial sensitive information barriers and client instruction training presentation referenced at paragraph 57 of the amended complaint and attached as Exhibit 3

0893secm

to the moving declaration states, "just because you can access it does not mean that you are authorized to access, use, or share it." Quoting from page 7.

So for example, your Honor --

THE COURT:  The SEC alleges that, despite all of those statements of control and training, there was the ability to access the FS Database through direct access, and that method was widely used.  So that all of the statements about the restrictions on access were misleading.

MR. REISNER:  So, your Honor, I think that the allegations of the complaint and the documents that are referenced in the complaint demonstrate that, notwithstanding the allegations in the complaint, all of the statements were true and accurate, and could not be plausibly viewed as misleading under the circumstances of this case.

THE COURT:  Hold on.  So the SEC says, or alleges, that there is this other method of access in which the individuals at the firm can use this other means of access, which is more anonymous, to obtain direct access to the FS Database so that all of the statements about all of the particular restrictions are, at best, misleading.

Now, you say that's not fair, that's not accurate. The specific statements about all of the barriers and training and how seriously they're taken are true.  The SEC says, but they're misleading.

0893secm

How can I decide a question of whether the statements were misleading in view of the contrary allegations in the complaint, on a motion to dismiss?

MR. REISNER:  Your Honor, for the same reason that Judge Abrams in the *Philip Morris* and *Ferroglobe* cases, that Judge Failla in the *Ong v. Chipotle* case, and that Judge Swain in the *Barilli v. Sky Solar Holdings* case and Judge Oetken in the *Menaldi* case, all cited in our brief, granted motions to dismiss in like circumstances, because given the statements --

THE COURT:  Each case has to be decided --

MR. REISNER:  100 percent.

THE COURT:  -- on its own facts and on its own allegations.

MR. REISNER:  100 percent.

And in this case, when you look at the challenged statements, and you look at the allegations in the complaint and the materials attached to the complaint, there is no plausible basis to conclude that the statements could be misleading under these circumstances.  And let me tell you why. There is no -- well, let me back up.

This hypothetical possibility that employees might be able to access certain post-trade information in the FS Database, which would have to overcome and violate the company's policies and procedures, would have to be inconsistent with the training offered, which would have to --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0893secm

THE COURT:  They say it's not hypothetical.

MR. REISNER:  No, there is no -- it is hypothetical. And that's because there is no allegation in the amended complaint that proprietary traders saw any sensitive customer post-trade data.  There is no allegation in the amended complaint that proprietary traders were even aware that the FS Database contained any sensitive customer post-trade data. There is no allegation in the complaint that any proprietary trader actually accessed sensitive customer post-trade data. There is no allegation in the complaint of any misuse of sensitive customer data.  There is no allegation in the amended complaint of unauthorized access to sensitive customer post-trade data.  It's entirely hypothetical.

And this hypothetical possibility that employees might be able to access certain post-trade information in the FS Database due to a temporary technological issue that was self-identified by Virtu, and self-remedied by Virtu, as acknowledged by the amended complaint, long before this SEC investigation even started, cannot render untrue or misleading Virtu's statements that it maintained and enforced information barriers, policies, and procedures.

You have to look at the statements that are alleged to be misleading in the complaint, such as in paragraph 29. "Virtu has established policies and procedures designed to safeguard sensitive client information, including technology

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0893secm

access controls to segregate sensitive information and review of approved personnel and permissions."  That is absolutely true and accurate, based on the allegations in the complaint and the documents referenced in the complaint.

And this hypothetical notion where there is no allegation that any proprietary traders saw, were aware that the FS Database contained any sensitive information, accessed information, misused information, cannot overcome the fact that those are true and accurate statements, incapable of plausibly misleading any investor for the same reason that the judges in the cases I just mentioned reached similar conclusions.

THE COURT:  Every case has to be decided on its own facts.

MR. REISNER:  Absolutely.  And the facts here, based on the statements in the amended complaint and the facts that are set forth in the amended complaint and the documents attached to the amended complaint, demonstrate that the statements are true.

THE COURT:  Okay.  I have that argument.

MR. REISNER:  Okay.  And it's very much like the -- absolutely every case has to be decided on its own merits. But, in each of the cases that I just mentioned, the same principle has been applied to dismiss the allegations of securities law violations in those cases on the same logic.

Here, based on the undeniable facts about what the

0893secm

amended complaint alleges and doesn't allege, the only plausible conclusion is that no investor could be misled, just like in the *Philip Morris* case where Judge Abrams ruled --

THE COURT:  Okay.  I have your argument on that.  Go ahead.

MR. REISNER:  Just I was just going to refer to some of the language used by Judge Abrams, Judge Failla, Judge Oetken.

THE COURT:  I have that argument.  I heard the litany.

MR. REISNER:  Okay.

In addition to the statements being true and accurate, the statements are also inactionable for the related reason that they consist of generalized assertions of corporate policy and practice that did not provide any guarantees or absolute assurances regarding the efficacy of those policies and practices.

I read paragraph 29 of the amended complaint.  That is a classic generalized assertion of corporate policy and procedure as are the allegations in paragraph 30 and 31, such as paragraph 30: "Prior to merging, both Virtu and ITG each maintained our own procedures to segregate and protect sensitive client data."  That is indisputably a true, accurate and generalized inactionable statement.

Same thing with paragraph 31.  The challenged statement is: "Post-closing, Virtu intends to continue to

0893secm

maintain and enforce appropriate information barriers to segment and protect sensitive client data." There is no basis to conclude that that's misleading based on the allegations in the complaint. And in addition, that, too, is a generalized assertion of corporate policy and practice that's inactionable. Just very similar to the statement in *ECA v. JPMorgan* found to be inactionable that the company maintained risk management processes that were highly disciplined and designed to preserve the integrity of the risk management process.

The recent case by Judge Engelmayer last month in the *Solar Winds* case reached a similar conclusion. Judge Engelmayer called statements non-actionable corporate puffery, inactionable as a matter of law. Statements are very similar to the challenged statements here. The statements there were that the company "places a premium on the security of its products and makes sure that everything is backed by sound security processes, procedures and standards." And also that the company "equips technology professionals with tools to help monitor, manage, and secure today's complex environment."

The statements challenged by the SEC here are virtually identical in kind to the statements challenged by the SEC in the *Solar Winds* case that were dismissed as inactionable by Judge Engelmayer. They are simply too generic to express any objective fact as a matter of law.

So that's our argument, your Honor, with respect to

0893secm

the Section 17(a)(2) and (a)(3) claims.  True and accurate, based on the allegations of the complaint, not capable of plausibly being viewed as misleading, and of a generalized matter, generalized assertion of corporate policy and practice that are inactionable.

Unless there are any questions, I'll move on to our Section 15(g) arguments.

THE COURT:  Go ahead.

MR. REISNER:  The Section 15(g) claim also should be dismissed.  Because the only plausible inference from the amended complaint and documents referenced in the amended complaint is that Virtu established, maintained, and enforced written policies and procedures reasonably designed to prevent the misuse of sensitive information.

Those allegations and documents, for the reasons I've described, demonstrate that Virtu established, maintained, and enforced policies providing for prohibitions on the misuse of sensitive data, prohibitions on accessing non-permission data, physical information barriers, and logical information barriers.

The fact that Virtu, as acknowledged in the amended complaint, self-identified and self-remedied the technological issue demonstrates that the company established, maintained, and enforced policies and procedures reasonably designed under Section 15(g).

0893secm

Again, this hypothetical risk, backed up by no specific allegations in the amended complaint, cannot refute these expressed policies and procedures set forth in the amended complaint, and the documents referenced in it the amended complaint.

In fact, the failure of the SEC to allege in the amended complaint any actual improper access or any misuse of sensitive data also demonstrates the effectiveness of Virtu's policies.  The SEC had more than 3 years to investigate this case.  And they investigated this case for more than 3 years, they obtained more than 30,000 documents.  They obtained scripts or code from the traders to determine whether or not that code contained any evidence of access to sensitive information.  There was no evidence, and there is no allegations of any such access in the amended complaint.

The SEC is not in a position to allege and has not alleged any improper access.

THE COURT:  But the SEC alleges that the procedures were not reasonably designed to assure that material, non-public information is not accessed.  So, the issue is whether as a matter of law the defendants can say no, the allegations in the complaint are insufficient to show that we didn't have procedures that were "reasonably designed."  That's not a question of what the result of the procedures were.  It's a question of whether the procedures were "reasonably designed"

0893secm

to assure what they were supposed to prevent.

What similar cases are there which say that similar SEC allegations with respect to "reasonably designed" are insufficient?  It's not a question of whether empirically they do or do not result in the impermissible accesses to material, non-public information.  It is a question of whether the procedures were reasonably designed.  Reasonableness usually is not something that can be decided on a motion to dismiss.

So, what cases are there under 15(g) where the Court says that the allegations should be dismissed on a motion to dismiss?

MR. REISNER:  So, there are no cases either way under Section 15(g).  The case we cite in our brief that's most on point is *Bassaw v. United Industries Corporation*, 482 F.Supp.3d 80, 87 (S.D.N.Y. 2020), in which the Court held where only one inference may be drawn as to reasonableness, then it becomes a question of law that can be resolved on a motion to dismiss and in this case --

THE COURT:  But there are lots of other cases, once it's conceded that there are no cases under 15(g), which attempt to determine whether reasonableness is something that can be decided on a motion to dismiss.  There are lots of other cases in other areas of the law that say reasonableness is not something that can be decided as a matter of law on a motion to dismiss.

0893secm

So, you say there's one other case where reasonableness as a matter of law was determined on a motion to dismiss in another area. That's not profoundly persuasive.

MR. REISNER: I think there are two other cases that we cite with *Bassaw* on the brief on the same page. So, *Bassaw* is not the only case that stands for this proposition. And there just isn't that much litigation under Section 15(g) in general, so it's not surprising that this issue hasn't come up in the context of 15(g).

But there are several cases in which courts have found where only one inference may be drawn as to reasonableness, then it becomes a question of law that can be resolved on a motion to dismiss. And here, based on the allegations and the lack of allegations, the only reasonable inference based on the materials set forth in the amended complaint --

THE COURT: The 17(a)(3) claim proceeds against VAL in any event. So what's the practical effect of granting the motion to dismiss?

MR. REISNER: Oh, I think that the Court should streamline the matter by --

THE COURT: I should give a haircut to the case.

MR. REISNER: Yeah.

THE COURT: Will it have any practical effect?

MR. REISNER: I think it will have substantial practical effect.

0893secm

THE COURT:  Why?

MR. REISNER:  It will limit the claims available to the SEC, and the scope of remedies available to the SEC based on the --

THE COURT:  Sure.  But hold on.  Discovery would go forward on the same issues for the same scope, and it would follow as the night the day that at the end of discovery there would be a motion for summary judgment, at which point all of these arguments would be raised on a full factual record, including what happened in terms of the alleged access to material, non-public information, so, and it would be decided on a full record, a full summary judgment record after discovery.  And discovery I assume isn't going to be limited in any way when there is a 17(a)(3) claim against VAL.

MR. REISNER:  Yeah.  So very practically, your Honor, look, paragraph -- the statements challenged in paragraphs 29, 30, 31 in our view are just obviously inactionable for the reasons I just described.  The other statements are inactionable as well, but those are so obviously inactionable they should be dismissed and that will have a real impact. Because the SEC will know that those statements are not in the case, and the SEC, I suspect, may view this case quite differently if those statements are not in the case.

There is no reason not to, at the very least, dismiss those statements, which are inactionable on their face, from

0893secm

this case, and we would view that as the proper outcome under the law and of significant practical impact as this case moves forward. Maybe it won't narrow discovery, but it will narrow the impact and potential remedies available in this case.

THE COURT: Okay. Go ahead.

MR. REISNER: Thank you, your Honor. That's all we have, unless there are any further questions from the Court.

THE COURT: No. Thank you.

SEC.

MR. TAAFFE: Thank you, your Honor. I think many of the points that I would have made in response to Mr. Reisner's arguments are ones that the Court's own questions elicited. So, I just like to respond briefly to a few things that he said, but of course I'll respond to any questions that the Court has in the meantime.

I think that the Court's questions really get to the heart of the SEC's position here, which is that a lot of the arguments that we've heard in the motion to dismiss are really factual questions, best posed in the context of a summary judgment motion or to a trier of fact.

We cite in our brief the *Strata Association* case that generally it's not appropriate on a motion to dismiss to make decisions about whether something is misleading, unless reasonable minds couldn't differ. And our amended complaint in the first instance and then our opposition to the motion to

0893secm

dismiss goes paragraph by paragraph, statement by statement, and says quite clearly why we believe a reasonable mind can conclude that these statements are misleading.

If there are any specific questions, I'm happy to address them, but I'll just take one that Mr. Reisner spoke to. Which is he referred to the November 2018 and March 2019 public presentations which were amended complaint paragraph 29, and he talked about the broad language of having established policies and procedures designed to safeguard sensitive information.

That's not the entirety of the statement. The statement then goes on to refer to technology access controls to segregate sensitive information and review of approved personnel and permissions.

And the heart of our complaint is that the technological access controls in particular with respect to the FS Database direct access method, that the technological access controls, that phrase, does not mean what it sounds like. Because what it sounds like is that each person gets access or does not get access as a technological matter based on their job description, and that wasn't true. That's the whole problem with the generic log-ins.

Similarly, they refer to review of approved personnel and permissions, but we also allege that with respect to the direct access method of the FS Database, there was no review of approved personnel and permissions.

0893secm

So, we think that these are just black-and-white false, but at the very least misleading, and we explain why that's true with respect to each of the statements at issue.

THE COURT:  The gist of the defendants' position, not to oversimplify, is that the SEC has been conducting an investigation for years and hasn't come up with any specific examples where the database was in fact misused.  So, it ill-behooves the SEC to argue in its complaint that these statements were misleading, because in fact, the procedures of the defendants have been sufficient, otherwise the SEC would have come up with examples where the procedures were abused.

Now, I fully understand the SEC's position that we're talking about whether the procedures were reasonably designed.  But is there no other answer to that argument, other than the question is whether they were reasonably designed?

Now, I mean, I can hypothesize about other answers, including the ability to disguise or evade the use of material, non-public information.  But I just want to make sure that I understand the SEC's position.

MR. TAAFFE:  Sure.  It's a bit of a layered question.  I think it is an important one and it kind of gets to 15(g) and also the misstatements a little bit.

Starting with the misstatements, I mean, the misstatements are either misleading or they're not.  We think on their own merits, and we explain why each one we think is

0893secm

misleading, but moving to 15(g), this is something that is really relied on quite extensively in the motion to dismiss, this idea that the SEC hasn't been able to adduce evidence or even allege actual misuse of the database. And there are several responses, we think each of which is just dispositive in this context.

The first is, as a technical matter, 15(g) does not have as an element -- a violation of 15(g) does not require showing actual misuse. It's just how the system is designed. And we can all imagine systems, maybe not this one, but just in life, in general, that could be egregiously flawed in design, but they may not be exploited just by sheer luck. Or maybe the design flaw is such -- and this does get more to this case -- that the system could have been exploited, but the system itself is incapable of determining that.

So, as we explain in our opposition, what we have here is not an absence of allegations because we sifted through all the evidence and we just couldn't point our finger to any. There is no evidence. In our investigation, it was lengthy, and part of the reason it was lengthy was because we expended so much effort trying to answer this very question, going back and forth, seeking log-in information and anything else we could find, that might show misuse. But the problem is that the way their system was designed, in part due to this generic log-in, it didn't track who was logging in, or once they logged

0893secm

in, what they were doing with it.  Virtu doesn't know what anybody viewed once they got into the FS Database.  And as a result, they can't tell us -- we asked the questions as best we could, and ultimately I think both parties agree that that information just doesn't exist.

So, if their system did not track activity in their database in a way that would preserve evidence of misuse, we think it's a little cynical to fault the SEC for failing to allege anything based on the absence of facts, especially in a circumstance where the absence of misuses or the evidence of misuse is not an element.

It's not an element of 15(g) for the further reason that one could imagine a case where maybe evidence could be found of misuse.  Not this case, because it can't be.  But a different case where it could be, but the SEC could move forward with a 15(g) allegation alleging unreasonable design before that system's exploited.

That's the purpose of Section 15(g), is to enable us to come in and ensure that we are able to take action where necessary without waiting for something to go terribly wrong.

So all of those things together we think suggest that this absence of misuse is just not relevant at this point.  Maybe it could be a factual point raised down the road.  That wouldn't surprise me.  But it is certainly not dispositive.  It can't be a basis to rule as matter of law we feel on this

0893secm

question.

So that's our 15(g) point.

THE COURT: You also agree there are no cases?

MR. TAAFFE: We definitely agree there are no cases. We're in a bit of the unknown here, at least as far as precedents go. And certainly we know there are all sorts of cases applying a reasonableness standard, and the take away we have from those cases, which we cited in our opposition, is that generally reasonableness is a question of fact.

And certainly in this case, at least we think that the allegations are more than sufficient to allow a finder of fact to develop the record and see whether they were actually reasonable in practice.

We expect to have expert testimony on the question of system design, and we expect that testimony to say this was not a reasonable approach to the question. But again, those are all questions that we think can be developed through discovery and are not appropriately addressed on a motion to dismiss.

Turning briefly to the Section (a)(2) and (a)(3) questions. Unless your Honor would like me to, I don't intend to go through the statements point by point. We do that in our opposition, we do it in the amended complaint itself. I would simply say a couple of things.

The first is that we've heard a lot of argument about these statements being too general to be actionable. We think

0893secm

that they're not.  I gave you the example of Section 29 where it's one thing to say that we have intentions to safeguard information or we have systems designed to do that.  Those broad statements I think would be a harder argument, but it is an argument we're not faced with because there are specific statements in each misstatement that we allege that are statements of fact.  Whether there are access controls, whether there are entitlement reviews, whether there are password permissioning.  Those are things that are true or false, and they're things that the listener to a statement would have been entitled to rely on in deciding whether to trust Virtu with their sensitive information.

This case features in large part statements made in response to questions that VAL's customers submitted.  And they submitted very pointed questions that really get to why this case is important.  They were concerned about what access proprietary traders had and what measures existed to ensure that their post-trade information could not be viewed by people who shouldn't be viewing it.  That's the way they submitted those questions.  And the language of Section 17(a)(2) speaks to, in light of the circumstances under which the statements were made, whether they're misleading.

The circumstance here is that these statements are being made in response to very pointed questions with respect to VAL on these issues, and with respect to VFI to the

0893secm

investing public as a whole on a very critical subject.

So, these are statements that you can identify as true or false, that are capable of verification in the language of *In re Ford*, and that are sufficiently specific that a reasonable investor could interpret them as a basis to act. And that's the *Suarez* case.

We would also note this is not a one-off conversation between a couple of individuals. These are repeated statements to the public at large and to investors over the course of months on a critical subject. And we cite three cases, *BHP*, *Petrobras*, and *Richman*, all Southern District. Those statements, even if they may be puffery or inactionable in isolation, when they're repeated time and time again on the same subject, that they can become material.

So we think they're material even in isolation here, but certainly, in the aggregate, we think that a reasonable mind can conclude these statements were materially misleading, and that's why we brought this case.

Finally, I would on Section 17(a)(3), I think our brief lays out our position on this, but I would just follow up on one question the Court had which is what's the practical effect here. If we're moving forward on discovery with the misstatements, and we think we should for the reasons we've said, we are going to be asking questions in discovery about everything to do with the misstatements, we'll find out how

0893secm

they were disseminated and all these things.

There are two cases, and these are not in our brief, but I'll just tell you because they seem important given the Court's question.  In the last year, *SEC v. Gallagher*, that's 21-8739 Judge Castel.  And then *SEC v. Rosenberger*, 22-3736, that's Judge Cote.  In both of these case, there was a similar situation where there were alleged misstatements, and those statements were alleged to comprise part of a scheme under both the scienter position and Section 17.  And in both cases the Court allowed the misstatement provisions to go forward on a motion to dismiss and said, look, because the misstatements are going under (a)(2), we won't get into the weeds about whether they're actionable under (a)(3) at this point.  We can take it up in summary judgment context.

And we think that's an easy way to handle it here, although for the reason we say in our brief, we think the statements are actionable under 17(a)(3).  And I'm happy to answer any questions the Court has.

THE COURT:  No.  Thank you.  All right.

No, if the defense wants to.

MR. REISNER:  Very briefly, your Honor.

Just looking at the paragraph 29 statement that the SEC's counsel alluded to.  That is specifically Virtu has established policies and procedures designed to safeguard sensitive client information, including technology access

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

0893secm

controls to segregate sensitive information and review of approved personnel and permissions.

That is indisputably accurate based on all of the policies and procedures that I read at the beginning.  Virtu has technology access controls.  Virtu segregates sensitive information.  Virtu includes a review of approved personnel and permissions.  It says it right in the amended complaint and the documents referenced in the complaint.

The SEC's theory is that because Virtu omitted information about this direct access to the FS Database, without appropriate permissioning, that that somehow renders false and misleading otherwise absolutely truthful statements.  That position is not defensible based on the allegations in the complaint and the absence of allegations in this complaint.

It is really very much like -- absolutely every case is its own facts -- but it's the same theory that was rejected by Judge Failla in *Ong v. Chipotle* where Judge Failla ruled that the allegations in the amended complaint do not conflict with defendants' statements that were in place, which did not amount to a guarantee --

THE COURT:  Okay.

MR. REISNER:  -- with regard to the efficacy of those practices, and --

THE COURT:  Okay.  I mean, I have your argument on that.

0893secm

MR. REISNER:  Okay.  Thank you, your Honor.

THE COURT:  Okay.  I'm prepared to decide.

The Securities and Exchange Commission ("SEC") brought this action against Virtu Financial Inc. ("VFI") and Virtu Americas LLC ("VAL"), alleging violations of Sections 17(a)(2) and 17(a)(3), of the Securities Act of 1933, and violations of Section 15(g) of the Securities Exchange Act of 1934.

The defendants now move to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), except for the claim pursuant to Section 17(a)(3) of the Securities Act against VAL.

The following facts are taken from the first amended complaint and are accepted as true for purposes of this motion.

The defendant VFI is a corporation headquartered in New York that owns common stock that is registered pursuant to Section 12(b) of the Exchange Act.  VFI's common stock trades on the Nasdaq.  The second defendant, VAL, is a registered broker-dealer and subsidiary of VFI.  VAL operates two types of businesses:  (1) customer-facing execution services which generate material, non-public information ("MNPI") regarding customers' trade orders and executions; and (2) proprietary trading operations.

The SEC alleges that in July 2017, VFI acquired KCG Holdings Inc. which owned a broker-dealer firm with a large trade execution business.  At the same time, VFI formed VAL

0893secm

which operated the customer-facing trade execution business acquired from KCG and some of KCG's proprietary trading business.  As a result of this acquisition, VAL bought and sold orders for large institutional customers.

Pursuant to Section 15(g) of the Exchange Act, VAL was required to establish, maintain, and enforce written policies is and procedures to prevent the misuse of MNPI, see 15 U.S.C. Section 78o(g).  The SEC alleges that VAL "purported to maintain information barriers which are a standard method used by broker-dealers and other financial institutions to prevent the use of MNPI by VAL and its associated persons."

From January 2018 to April 2019, the SEC alleges that VAL maintained a primary database for daily business operations and a backup database (collectively the "FS Database"), that contained all post-trade information generated from VAL's customer orders, including, among other items, customer-identifying information, the security name, the side (buy or sell) and the execution price and volume.  VAL's employees could access the FS Database either (1) by logging into the graphical user interface ("GUI") using each employee's unique credentials (the "permissioning method"), or (2) by using a user name and password (the "direct access method").  When accessing the FS Database using the direct access method, VAL employees used generic credentials that were widely shared, regardless of the employee's role at the firm or the business

0893secm

need.

The SEC alleges that no later than January 2018, VAL began storing sensitive customer trade execution information in the FS Database which also housed the preexisting proprietary trade data.  The SEC alleges that under VAL's policies and procedures at the time, proprietary traders were supposed to be walled off from access to certain customer trade details to prevent them from having access to MNPI.  Despite these policies, the SEC claims, that virtually all employees effectively had unrestricted access to the MNPI in the FS Database.  The SEC therefore complains that VAL failed to implement and enforce effective policies and procedures with respect to the direct access to the FS Database, one of the primary means of accessing MNPI.

The SEC alleges that in approximately August 2018, VAL's database developers started to discuss the need to improve the safeguards to access the FS Database.  These discussions included an e-mail that was sent on August 13, 2018, to over 20 VAL employees.  The SEC alleges that, despite VAL's recognizing the need for improvements, VAL took no immediate steps to mitigate the risk of misuse of the MNPI. Instead, for another eight months, VAL allegedly continued to enter customer post-trade information into the FS Database without improving its protocols to access to the FS Database. During that time period, VAL handled approximately 25 percent

of all market orders placed by retail investors in the United States, and during this time the SEC alleges that proprietary traders could access and misuse the MNPI.

The SEC alleges that during this time period, the defendants made and disseminated materially misleading statements and omissions to customers and the public regarding VAL's protocols to access the MNPI.  In presentations on November 7, 2019 and March 13, 2019, VFI asserted that "Virtu has established policies and procedures designed to safeguard sensitive client information, including technology access controls to segregate sensitive information, and review of approved personnel and permissions."  VFI's CEO allegedly reiterated these statements to the public in November 2018.  On approximately March 1, 2019, the SEC alleges that the defendants disseminated a letter to VAL customers describing the procedures to "segregate and protect sensitive client data," but omitting the availability of direct access to the FS Database by VAL's proprietary traders.

Thereafter, in a January 25, 2019, press release, regarding VFI's most recent acquisition, the SEC alleges that the defendants asserted that Virtu would "continue to maintain and enforce appropriate information barriers to segment and protect sensitive client data."  The SEC also alleges that in response to customer due diligence questionnaires, VAL did not reveal that its employees could access MNPI through the direct

0893secm

access method.

The SEC alleges that the alleged creation and dissemination of these misleading statements violated Section 17(a)(2) and 17(a)(3) of the Securities Act of 1933.

The SEC alleges that during the relevant time period, January 2018 to April 2019, VAL obtained money or property in the form of commissions VAL charged on the trades it executed on its customers' behalf, and money it obtained from customers by executing trades with those customers "by means of its false or materially misleading statements" regarding its employees' access to the FS Database and VFI, as VAL's parent company, in turn also received money or property from its false or misleading statements.

The SEC alleges that, despite its public statements to the contrary, VAL did not have policies or procedures in place that addressed the FS Database and that VAL "provided no training or other directives to its employees regarding the expectations for use of that database and its highly sensitive information."  The SEC complains that the direct access method of interacting with the FS Database was "widely used," and that traders complained in internal chat messages that they ran into a alerts stating that the system had exceeded the number of users allowed.  In response, VAL allegedly increased the available number of simultaneous direct access log-ins from 75 in November 2019 to 125 users by the end of that month.

0893secm

The SEC alleges that VAL did not know which employees were using the FS Database, or how the FS Database was being used during this time.  The SEC maintains that VAL had automated systems and policies in place during the relevant period, including, among others, a database developed to monitor the FS Database, lockdown systems designed to detect abnormal trading activity, and employing training about access to sensitive information.  But the SEC alleges that these systems and policies were not designed to detect and prevent other potential misconduct, and specifically the misuse of MNPI in the FS Database.  As a result of this conduct, the SEC alleges that VAL violated Section 15(g) of the Exchange Act.

The SEC filed a complaint in this court on September 12, 2023.  The defendants moved to dismiss the complaint on December 4, 2023.  Thereafter, upon consent of the defendants, the SEC filed an amended complaint on January 12, 2024.

In the first amended complaint, the SEC asserts five causes of action, namely:  (1) violations of Section 17(a)(2) of the Securities Act against VFI; (2) violations of Section 17(a)(2) of the Securities Act against VAL; (3) violations of Section 17(a)(3) of the Securities Act against VFI; (4) violations of Section 17(a)(3) of the Securities Act against VAL; and (5) violation of Section 15(g) of the Exchange Act against VAL.

0893secm

The defendants now move to dismiss all the claims except the Section 17(a)(3) claim against VAL.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is not to weigh the evidence that might be presented at a trial, but merely to determine whether the complaint itself is legally sufficient. *Goldman v. Belden*, 754 F.2 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*. 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff

0893secm

relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

The SEC claims that VAL violated Section 15(g) of the Exchange Act by failing to design and enforce reasonable measures to safeguard the MNPI.  The SEC argues that the defendants violated Sections 17(a)(2) and 17(a)(3) of the Securities Act by making and disseminating false and misleading statements about their systems for protecting customers' MNPI.

The defendants move to dismiss the Section 15(g) claim because the defendants contend that the defendants complied with statutory requirements and that the Section 17(a) claims should be dismissed because the challenged statements were accurate and thus not actionable.  The defendants also contend that the SEC's Section 17(a)(3) claim against VFI should be dismissed because the first amended complaint does not allege that VFI engaged in conduct "beyond the challenged statements themselves."

Section 15(g) of the Exchange Act provides that "every registered broker or dealer shall establish, maintain, and enforce written policies and procedures reasonably designed, taking into consideration the nature of such broker's or dealer's business to prevent the misuse of material, non-public

0893secm

information." 15 U.S.C. Section 78o(g).  The SEC alleges that VAL violated Section 15(g) by failing to design, maintain, and enforce reasonable measures to prevent the misuse of MNPI.

The defendants argue that the SEC has failed to show that VAL's policies and procedures to safeguard the MNPI were "unreasonable."  But the defendants misconstrue the proper formulation of the statute.  The statute requires that VAL have written policies and procedures that are "reasonably designed" to prevent the misuse of MNPI.  And the SEC alleges that the measures that VAL adopted to protect MNPI, including VAL's training and its lockdown systems, were not reasonably designed to prevent the misuse of MNPI.  The SEC has alleged why it contends that VAL's procedures are not reasonably designed to prevent the misuse of MNPI.

For purposes of a motion to dismiss, it is the defendants' burden to show, as a matter of law, that the plaintiff has failed to plead a plausible claim -- namely, that the defendants in this case have failed to establish policies and procedures that were "reasonably designed."  The defendants ask the Court to find as a matter of law that VAL's procedures were in fact reasonably designed to accomplish its purpose. The parties agree that there is no similar case construing Section 15(g) of the Securities Act.  But, reasonableness is generally an issue of fact that cannot be decided on a motion to dismiss, as courts have found in other cases, construing

0893secm

other laws, *see, e.g.*, *Benefield v. Pfizer, Inc.*, 103 F.Supp.3d 449, 462 (S.D.N.Y. 2015) (construing design defect and manufacturing defect claims); *Cooper v. Anheuser-Busch, LLC*, 553 F.Supp.3d 83, 95-97 (S.D.N.Y. 2021) (construing deceptive labeling claim laws); *Prysmian Cables & Systems U.S.A., LLC v. ADT Commercial, LLC,* 665 F.Supp.3d 266, 245 (D. Conn. 2023) (construing generally accepted practices and procedures).

In light of the allegations regarding the "unfettered" access to the FS Database, and the alleged gaps in VAL's safeguards to prevent misuse of the MNPI, the question of whether VAL's policies can be considered reasonable as a matter of law cannot be decided on a motion to dismiss. The motion to dismiss the SEC's claim under Section 15(g) against VAL is therefore denied.

Section 17(a)(2) of the Securities Act forbids "any person in the offer or sale of securities" "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading." 15 U.S.C. Section 77q(a)(2).

The SEC alleges that the defendants violated the statute by making false and materially misleading statements regarding their policies and procedures to protect customers' MNPI. The SEC claims that the defendants made these statements

0893secm

in the course of public presentations, a customer letter, a press release, and responses to customers' questionnaires. Each of these statements allegedly described the effectiveness of the defendants' protections for confidential information, none disclose any gap in these protections, and none reveal that employees could access the FS Database through the direct access method.

It is well-established that "literally true statements that create a materially misleading impression will support claims for securities fraud." *Set Capital, LLC v. Credit Suisse Group AG*, 996 F.3d 64, 85, (2d Cir. 2021) (addressing alleged violations of Section 10(b) of the Exchange Act); *Wilson v. Merrill Lynch*, 671 F.3d 120, 130 (2d Cir. 2011) (discussing the adequacy of disclosures in the context of other provisions of the Exchange Act). And, because reasonable minds could differ "on the question of whether the statements alleged in the complaint were misleading in light of the circumstances is under which they were made," this Court cannot resolve this question on a motion to dismiss. *See S.S. Trade Association of Baltimore International Longshoreman's Association Pension Fund v. Olo, Inc.*, 2023 WL 4744197, *4 (S.D.N.Y. July 25, 2023).

therefore, the defendants' motion to dismiss the SEC's claims pursuant to Section 17(a)(2) against VAL and VFI is denied.

To assert a claim under Section 17(a)(3) of the

0893secm

Securities Act against VFI, the SEC must allege that VFI "through any means or instruments of transportation or communication in interstate commerce or by use of the mails" engaged in "any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. Section 77q(a)(3).  In the first amended complaint, the SEC alleges that VFI violated Section 17(a)(3) by repeatedly making and disseminating false and misleading statements about the policies and procedures it adopted to protect MNPI.

The defendants move to dismiss this claim, arguing that in the Second Circuit, misstatements or omissions -- without more -- cannot form the basis for liability under Section 17(a)(3).  Rather, the defendants argue, it is necessary for the SEC to plead that the defendant undertook a scheme that went beyond mere representations.  The defendants also proceed to argue that VFI's dissemination of its own misrepresentations is insufficient to establish liability under Section 17(a)(3), and that if dissemination of misrepresentations is sufficient for scheme liability, the defendant must disseminate misrepresentations made by others. In support of this argument, the defendants rely on *SEC v. Rio Tinto PLC*, 41 F.4th 47 (2d Cir. 2022).  In that case, the Second Circuit Court of Appeals held that "misstatements and omissions can form part of a scheme liability claim pursuant to

0893secm

Sections 17(a)(1) and 17(a)(3) of the Securities Act, and Sections 10(b) of the Exchange Act, but an actionable scheme liability claim also requires something beyond misstatements and omissions, such as dissemination," *Id.* at 49. But *Rio Tinto* does not answer the question of whether a defendant's dissemination of its own misstatements is insufficient for liability under Section 17(a)(3).

In this case, the SEC alleges that VFI disseminated the misstatements that VFI allegedly made. The defendants contend that because VFI made the statements it disseminated, VFI cannot be subject to liability under Section 17(a)(3). The defendants point to *Lorenzo v. SEC* 587 U.S. 71 (2019), in which the Supreme Court considered whether "those who do not make statements but who disseminate false and misleading statements to potential investors with the intent to defraud can be found to have violated related provisions of the securities laws" including Section 17(a). *Lorenzo* held that a defendant who disseminated a false statement, but did not make it, could be held liable under the scheme provisions. Thus, *Lorenzo* also did not answer the question of whether a defendant can be found liable under Section 17(a)(3) for having disseminated false statements made by the defendant.

The defendants rely on two other cases, decided prior to *Lorenzo* and *Rio Tinto*, that were decided by district judges in this circuit, neither of which addressed the specific

0893secm

question presented here.  In *SEC v. Stoker*, 865  F.Supp.2d 457 (S.D.N.Y. 2012), the defendant moved to dismiss a claim under Section 17(a)(3) for failing to allege a fraudulent or deceptive scheme distinct from the misstatements and omissions alleged in the SEC's Section 17(a)(2) claim.  The district court in *Stoker* held that "a defendant may be liable under Section 17(a)(2) and Section 17(a)(3) based on allegations stemming from the same set of facts, as long as the SEC alleges that the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations." *Id.* at 467. Because the complaint in that case plausibly alleged a course of conduct "beyond the misrepresentations that are covered by Section 17(a)(2)," the Court found that the SEC's allegations were sufficient to state a claim under Section 17(a)(3).  *Id.* at 467-68.  The district court in *Stoker* was not faced with a factual situation where the defendant was sued under Section 17(a)(3) for having disseminated statements that the defendant made.  *Id.* at 467.

In *SEC v. Kelly*, 817 F.Supp.2d 340 (S.D.N.Y. 2011), the district court dismissed the SEC's claim under Section 17(a)(2) of the Securities Act against two defendants who had not made any allegedly misleading statements.  The district court decision does not address the question of whether an entity that makes misleading statements can be held liable under Section 17(a)(3) for also disseminating those

0893secm

statements.

By contrast, the SEC points to two recent district court decisions that support the conclusion that an entity that makes false and misleading statements and then disseminates those statements can be held liable under Section 17(a)(3). In *SEC v. Amah*, 21 CV 6694, 2023 WL 6383956 (S.D.N.Y. Sept. 28, 2023), the district court granted summary judgment in the SEC's favor on a claim that the defendant violated Section 17(a)(3) by disseminating its own misstatements. *See Id.* at 11-14. Judge Karas concluded "Defendant can be held liable for scheme liability for directly disseminating statements as long as he possessed the requisite scienter." *Id.* at 14. The statements at issue were statements that the defendant made.

And in *SEC v. Terraform Labs Pte Ltd.*, 23 CV 1346, 2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023), the district court denied cross motions for summary judgment concluding that material facts remained in dispute regarding the SEC's claims of misstatement liability and scheme liability under Section 17(a)(3) of the Securities Act, based on the dissemination of allegedly misleading statements, among other things. The court permitted the SEC to proceed on its claim that the defendants were liable under Section 17(a)(3) when those defendants had, among other thing, allegedly "made and disseminated" "numerous false and misleading statements" to investors and the public. *See Id.*

0893secm

In both *Amah* and *Terraform Labs*, the district court judges found that dissemination by the defendant of the defendant's own statements was sufficient to allege a violation under Section 17(a)(3). And although the Second Circuit Court of Appeals has not addressed a case with facts comparable to the allegations here, at this point the SEC has sufficiently stated a claim against VFI under Section 17(a)(3) for allegedly disseminating false and misleading statements to survive VFI's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is denied. The clerk is directed to close ECF Nos. 22 and 34.

So ordered.

I should add that I appreciated the briefs and the argument. I thought that the briefs were very well done. So, thank you all.

Is there a scheduling order yet?

MR. TAAFFE: There's not, your Honor.

THE COURT: Parties should submit a Rule 26(f) report to me two weeks from today. Okay. Good afternoon, all.

MR. REISNER: Thank you, your Honor.

(Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300