VIA ECF

October 29, 2025

The Honorable Clay H. Kaminsky
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 505 North
Brooklyn, New York 11201

   Re: *In re Virtu Financial*, No. 1:23-cv-03770-NGG-CHK (E.D.N.Y.)

Dear Magistrate Judge Kaminsky:

   Pursuant to Rule III.A.2 of Your Honor's Individual Practices and Rules, the parties in the above-captioned matter seek an informal conference to resolve a discovery dispute.

**JOINT STATEMENT OF THE CASE**

   This is a putative federal securities fraud class action against Virtu Financial, Inc. ("Virtu") and four of its current and former officers: Douglas Cifu (Co-founder and former Chief Executive Officer), Sean Galvin (former EVP and Chief Financial Officer), Alex Ioffe (former EVP and Chief Financial Officer), and Joseph Molluso (Co-President and Co-Chief Operating Officer).

   Virtu is a global financial services firm that operates a proprietary trading business, through which it buys and sells securities for its own account, as well as an execution business, through which it buys and sells securities for its customers. Virtu maintains a database, known as the "FS Database," that houses historical trade information for both businesses. For a period of fifteen months in 2018 and into 2019, there was an issue with the FS Database wherein non-permissioned Virtu employees could hypothetically access the FS Database using generic login credentials (the "FS Database Issue"). Virtu contends that it fixed the FS Database Issue in April 2019.

   Lead Plaintiff City of Birmingham Retirement and Relief System ("Plaintiff") alleges that Defendants made materially false and misleading statements to investors about Virtu's protection of client information over a five-year period. Plaintiff alleges that investors learned of the FS Database Issue gradually in 2023, when the SEC announced it was investigating and eventually bringing suit against Virtu, which Plaintiff alleges caused Virtu's common stock share price to fall. Plaintiff brought suit under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. ECF No. 39.

   On March 18, 2025, Judge Garaufis largely denied Defendants' motion to dismiss, and this case proceeded to discovery. ECF No. 58. The deadline for the parties to complete document discovery is November 7, 2025. ECF No. 60.

The Honorable Clay H. Kaminsky
October 29, 2025
Page 2

## PLAINTIFF'S POSITION

From the beginning, Plaintiff has made every effort to be reasonable. Plaintiff agreed to hold off on proposing search terms and custodians until after reviewing the documents that Virtu had previously produced to the SEC (the "SEC Productions"). This enabled Defendants to make an initial production at minimal cost, as the documents had already been compiled, organized, and reviewed. At the same time, it was understood that the SEC Productions were compiled using extremely limited search terms and no custodians. The SEC Productions were an agreed-upon starting point.

Defendants served their first substantial SEC Production on August 6, 2025, finishing on August 19. Plaintiff then expeditiously reviewed over 30,000 documents. Plaintiff sent its narrowly tailored list of proposed custodians and specific search terms to Defendants on September 12. During the review, Plaintiff noted that the SEC Productions largely consisted of communications between lower-level Virtu employees. Given that Plaintiff must ultimately prove what the Individual Defendants (the most senior executives at Virtu) knew, or recklessly disregarded, when making the alleged false and misleading statements to investors, however, Plaintiff's list focused, in part, on individuals higher up the corporate chain who undeniably have responsive information. The parties are at an impasse on two custodians and one search term.

### A.    Custodians

Plaintiff's September 12 list proposed just thirteen custodians out of nearly one thousand Virtu employees. Six had initially been proposed by Defendants. Of the seven Plaintiff added, three were identified ***by Defendants*** in their responses and objections to Plaintiff's interrogatories as individuals with information relevant to the allegations of this case. In other words, Plaintiff added only ***four*** individuals not previously identified by Defendants.

The parties appear to have come to terms on all but two: Aaron Simons and Brett Fairclough. Mr. Simons, according to materials publicly filed by Virtu, was its Chief Technology Officer during the relevant period, in which role, per a recent press release, he had "oversight of all technology and infrastructure, including the post-merger technology integrations of both KCG and ITG." The KCG integration is directly at the heart of this case -- it was that integration that led to the FS Database Issue. As for Fairclough, he was the Chief Operating Officer and Co-President of Virtu during the class period. Mr. Fairclough appears on many documents in the SEC Productions, including discussion of the FS Database Issue. Plaintiff has explained its bases for including Simons and Fairclough to Defendants several times. Unsurprisingly, Defendants have never actually asserted that the two disputed custodians do not have relevant information. Instead they hang their hat on the misguided belief that their documents would be duplicative of those of the other proposed custodians.

But that argument does not hold water. For instance, Defendants have produced an organizational chart identifying that Mr. Fairclough had eleven direct reports. Not one of the eleven individuals identified on the chart is a proposed custodian. So, if there were communications about relevant issues solely between Mr. Fairclough and any of his direct reports, then Plaintiffs will not be receiving them. Moreover, both Simons and Fairclough are identified on other organizational charts

The Honorable Clay H. Kaminsky
October 29, 2025
Page 3

as direct reports to defendant Douglas Cifu, Virtu's CEO during the relevant period. The documents of both Simons and Fairclough will help Plaintiff connect the corporate chain to the FS Database Issue. There is no justifiable reason for Defendants to shield their documents from Plaintiff.

### B.    Search Terms

Plaintiff is frankly puzzled as to why the parties are at an impasse on the second issue. According to the original search term hit report run by Defendants, *96.2%* of all hits (68,214) came from the files of two software developers (proposed by Defendants) and related to *a single* search term. Plaintiff has always agreed that search term (the "Disputed Term"[1]) yielded lopsided numbers for those two custodians. As an example, on October 7, I stated to Defendants, "we agree that [the Disputed Term] from our September 12 proposal yielded a disproportionate (and potentially excessive) number of hits for Desmond Carbery and David Karnowski." Plaintiff then proposed more limited search terms and date ranges for Karnowski and Carbery. However, the Disputed Term did **_not_** yield a disproportionate or excessive number of hits for any of the other custodians. The same term yielded only *2,306 documents* (3,991 including families) for those custodians – which includes all four Individual Defendants. Yet, at every turn, Defendants have insisted on running the same, more limited term across *all* custodians, despite the fact that the Disputed Term yielded a reasonable number of hits.[2] Nonetheless, Plaintiff has continuously tried to offer a solution. Most recently, on October 21, Plaintiff went so far as offering to agree to Defendants' substantially narrowed proposal for the Disputed Term for Karnowski and Carbery (the effect of which would eliminate *over 10,000 documents* from the pool), to the extent Defendants agreed to both run the Disputed Term for the other custodians, and include Simons and Fairclough as custodians. Defendants outright rejected this proposal and continue to refuse to separate the two custodians from the rest.[3] Defendants should run the Disputed Term for all custodians beyond Carbery and Karnowski.

---

[1]    The search string at issue is (fs* w/50 (permiss* OR entitle* OR trad* OR prop* OR access* OR barrier* OR limit* OR restrict* OR confidential* OR "agency data" OR client* OR customer*)).

[2]    According to an October 10 email and hit report, Defendants were willing to review *8,906* documents (in addition to the 31,757 documents produced, mostly from the non-custodial SEC production, to date). That number of documents simply pales in comparison to those in a typical securities fraud case. *See e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (Garaufis, J.) ("Lead Counsel: reviewed seven million pages of documents"); *In re Giant Interactive Group, Inc. Securities Litigation*, 279 F.R.D. 151, 157 (S.D.N.Y. 2011) (where the parties "ultimately produced in excess of two million documents[.]").

[3]    On October 10, Defendants reiterated that their "*proposal is that we'd run these over all custodians, not just Carbery and Karnowski.*" Defendants have also tried to severely limit the potential pool of documents. For example, Defendants' first counterproposal for the Disputed Term eliminated *99.78%* of the documents originally captured – taking the results down from 60,889 to an astounding 131.

The Honorable Clay H. Kaminsky
October 29, 2025
Page 4

## DEFENDANTS' POSITION

Plaintiff served document requests on May 7, and Defendants served responses and objections on June 10.  *See* ECF No. 60.  Defendants subsequently produced the roughly 30,000 documents that Virtu had produced to the SEC, comprising documents identified by running the search terms "viewonly" and "fsviewonly" (the generic login credentials at the heart of the FS Database Issue) across Virtu's entire email system—not limited by custodian—from January 2018 to March 2020.  On July 30, Plaintiff stated that it would propose search terms and custodians to supplement the SEC production.  While waiting for Plaintiff's proposal, Defendants collected custodial data for six key individuals:  the four individual defendants and the two developers principally responsible for fixing the FS Database Issue, Desmond Carbery and David Karnowski.  It was not until September 12 that Plaintiff sent proposed search terms and asked for another seven custodians.

Defendants have largely agreed to Plaintiff's proposal, save for two custodians and one search term.[4]  Plaintiff's request for this additional discovery should be denied:

***Custodians.***  The two disputed custodians are Aaron Simons, former CTO and current CEO, and Brett Fairclough, Co-COO and Co-President.  Plaintiff insists that Simons had "oversight" of all technology and "post-merger technology integrations" after Virtu acquired KCG, and reported to defendant Cifu.  In other words, Plaintiff seeks Simons' documents because he holds a senior-level position at Virtu.  Courts routinely reject discovery requests that target senior officers who are not themselves alleged to have engaged in any wrongdoing.  Indeed, "it is equally plausible to assume that . . . [senior management] would have less information about specific transactions than employees lower in the hierarchy."  *Mortg. Resol. Servicing LLC* v. *JPMorgan Chase Bank N.A.*, 2017 WL 2305398, at *3 (S.D.N.Y May 18, 2017); *see also Assured Guar. Mun. Corp.* v. *UBS Real Est. Sec. Inc.*, 2013 WL 1195545, at *3 (S.D.N.Y. Mar. 25, 2013) (declining to compel searches based on "speculat[ion]" that proposed custodians' senior management status "increase[d] the relevance of their files").  So too here.  Simons did not make any of the alleged false statements, and is not alleged to have misled shareholders.  And, tellingly, Plaintiff has reviewed more than 30,000 documents on the core issue in the case (*i.e.* permissions for the FS Database), and does not identify any factual basis to say that Simons had anything to do with integrating KCG's data into the FS Database, identifying the FS Database Issue, or implementing its fix.  Simply put, this request for Simons' documents is a pressure-tactic designed to obtain burdensome discovery from Virtu's current CEO, and should be rejected.

With respect to Fairclough, Defendants identified him in response to an interrogatory as one of 10 people who "worked on" the solution to the FS Database Issue.  Four of those 10 are already custodians (Carbery, Jagtap, Rupprecht, and Karnowski), and Fairclough had no independent responsibility for the FS Database Issue such that he would have relevant, non-duplicative documents.  Plaintiff argues that Fairclough should be a custodian because he had eleven direct reports, none of

---

[4]    Defendants agreed to add four additional custodians that Plaintiff proposed:  Prasanna Jagtap (Head of Database Administration), Tamir Nitzan (Chief Information Security Officer), Nick Rupprecht (Global Director of Clearance and Settlement), and Ryan Hodgson (a trader).  Plaintiff has dropped the demand for the seventh custodian, Travis Haussler (a trader).

The Honorable Clay H. Kaminsky
October 29, 2025
Page 5

whom are custodians.  But those eleven reports are not custodians precisely because they were not involved in the FS Database Issue, which was handled by a different group.  Moreover, Fairclough had no role in drafting or disseminating the allegedly false statements at the core of this fraud case.  For these reasons, this request to search Fairclough's custodial documents is duplicative, burdensome, and not proportional to the needs of the case.

      *Search Terms.*  Upon receiving Plaintiff's proposal, Defendants warned Plaintiff that the Disputed Term was overbroad and would pull in ordinary business communications untethered to the FS Database Issue or the alleged fraud.  In hopes of reaching a compromise, Defendants proposed the following modified terms for two date ranges:

| 1/1/2018 – 4/30/2019 | fs* w/10 (permiss* OR entitle* OR trad* OR prop* OR access* OR barrier* OR limit* OR restrict* OR confidential* OR "agency data" OR client* OR customer*) |
|---|---|
| 5/1/2019 – 9/30/2023 | (fs* w/10 (permiss* OR entitle* OR trad* OR prop* OR access* OR barrier* OR restrict* OR confidential* OR "agency data" OR client* OR customer*)) AND (disclos! or transparen!) |

      Defendants have now reviewed the documents that hit on this modified version of the Disputed Term for our initial set of custodians and can confirm that even our modified terms yielded an incredibly low responsiveness rate—under 5%—and pulled in almost exclusively junk messages containing lines of irrelevant code.  We provided Plaintiff with some exemplars to demonstrate the types of false hits being pulled in by the modified term.  Plaintiff nonetheless brings this application to force Defendants to run an even more expansive, burdensome search string.

      Plaintiff's principal argument is that Defendants should be forced to run the Disputed Term because the review burden is not substantial.  But that argument ignores the information Defendants have provided showing that even a narrowed version of the Disputed Term yields little relevant material.  Moreover, since we have not yet completed ingesting data for all 10 custodians to whom we've agreed, we cannot yet assess the true burden of the Disputed Term.

      "Proportionality focuses on the marginal utility of the discovery sought."  *Lam* v. *State St. Corp.*, 2025 WL 834885, at *4 (S.D.N.Y. Mar. 17, 2025).  Courts therefore consider whether search terms are "carefully crafted" in assessing a motion to compel, as "[p]oorly crafted terms may return thousands of irrelevant documents and increase, rather than minimize[,] the burden of locating relevant and responsive ESI." *See, e.g.*, *id.*  The Disputed Term is demonstrably "poorly crafted" and of "marginal utility."  Plaintiff's request should therefore be denied.

****

Respectfully submitted,

| _/s/ Alison R. Benedon_ | _/s/ Robert D. Gerson_ |
|---|---|
| ALISON R. BENEDON | ROBERT D. GERSON |

The Honorable Clay H. Kaminsky
October 29, 2025
Page 6

AUDRA J. SOLOWAY
ANDREW G. GORDON
ALISON R. BENEDON
JOHAN E. TATOY
KEVIN P. MADDEN
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  212/373-3000
212/757-3990 (fax)
asoloway@paulweiss.com
agordon@paulweiss.com
abenedon@paulweiss.com
jtatoy@paulweiss.com
kmadden@paulweiss.com

*Counsel for Defendants*

SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
ROBERT D. GERSON
MAGDALENE ECONOMOU
JOSHUA D. FORGY
ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
malba@rgrdlaw.com
rgerson@rgrdlaw.com
meconomou@rgrdlaw.com
jforgy@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*